UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                                      )
                                            )
    PETER PAUL MITRANO           )   Case No. 08-12890-SSM
                                            )   Chapter 13
               Debtor        )

**MEMORANDUM OPINION**

Before the court are two motions to dismiss the debtor's case, both filed by the standing chapter 13 trustee, Gerald M. O'Donnell. The first, which was previously argued on July 30, 2008, and taken under advisement, was based on an asserted lack of good faith.[1] Virginia Kelly, the debtor's former wife and the holder of a large claim (which the debtor disputes) for unpaid child support, was present by counsel and supported the motion to dismiss. The second motion, which was argued on September 23, 2008, is based on the debtor's failure to meet the debt eligibility requirements for chapter 13.[2] For the reasons stated, both motions will be granted, and the case will be dismissed.

---

[1] The trustee also filed an objection to confirmation of the debtor's plan. While the court had the trustee's objection to confirmation under advisement, a hearing was held on a separate objection filed by the Internal Revenue Service. That objection was sustained, and an order has been entered denying confirmation, which renders the trustee's objection to the plan moot.

[2] The debtor was not present for the second hearing. The court was advised that the debtor had a conflicting hearing in the United States District Court that same afternoon on a warrant for nonpayment of child support. The debtor did file a written response, which the court has considered, to the motion to dismiss.

Background

Peter Paul Mitrano ("the debtor"), who describes himself as a self-employed patent attorney, filed a voluntary petition in this court on May 22, 2008, for adjustment of his debts under chapter 13 of the Bankruptcy Code. On his schedules he listed secured claims in the amount of $412,710, priority unsecured claims (all disputed) in the amount of $531,550, and an indeterminate amount of unsecured claims without priority.[3] On his schedule of income he reported $0 on a monthly basis from his employment as a patent attorney[4] and $1,400 per month from rent. He reported monthly expenses on Schedule J in the amount of "at least" $3,465, for a monthly shortfall of at least $2,085. His original plan, filed on June 5, 2008, proposed to pay the chapter 13 trustee $10 per month for 36 months. The plan values an automobile securing Pentagon Federal Credit Union at $25,000.00, to be paid with interest at 6% in monthly installments of $500.00.[5] The debtor's schedules list three parcels of real estate,[6] and the plan

---

[3] On Schedule F, which is used to report unsecured claims without priority, the debtor simply stated that the list of creditors (the mailing matrix) was incorporated by reference, and that all such claims were "contingent, unliquidated, and disputed." He also stated that "not all of debtor's creditors are stated, and debtor does not intend to include all creditors in this proceeding." Subsequent to the hearing on the motion to dismiss, the debtor has filed an amended schedule F (albeit not on the required form) listing $379,794 in unsecured claims, a good portion of which are characterized as disputed.

[4] Apparently, the debtor's license to practice law has either been suspended or revoked in every jurisdiction in which he is admitted to practice; however, the debtor represented that at least some of those rulings are still on appeal. The debtor further stated at the hearing that he is also licensed as a professional engineer and might pursue work in that field if unable to continue with the practice of law.

[5] Although the plan states that the payments to Pentagon Federal Credit Union would be paid by the trustee, at oral argument the debtor stated that his intent was to make the payments directly.

[6] Two parcels are located in Fairfax, Virginia, and one in Hanover, New Hampshire.
(continued...)

gives notice that the debtor will file adversary proceedings to avoid six judgment liens against them as "contrary to law and justice."

Discussion

A.

The court will address first the trustee's contention that the debtor, because of the amount of his unsecured debt, is ineligible to be a chapter 13 debtor. Section 109(e) of the Bankruptcy Code limits eligibility for chapter 13 relief to individuals with regular income who owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $336,900, and noncontingent, liquidated secured debts of less than $1,010,650. It is important to note that *disputed* debts are *not* excluded from the calculus, only debts that are contingent or unliquidated. Additionally, a debt is neither contingent or unliquidated simply because the debtor disputes that he or she is liable. A debt is contingent only if liability is dependent on an uncertain event, the classic example being the liability of a surety, guarantor, or accommodation maker. A debt is unliquidated only if the amount of the debt cannot be determined by computation, the classic example being a personal injury tort claim that has not yet been reduced to judgment. The filed proofs of claim in this case assert $440,124 in priority unsecured claims and $262,051 in general unsecured claims, for a total of $702,175 in unsecured claims. The debtor's schedules, as noted, reflect $531,550 in priority unsecured debt and $375,794 in general unsecured debt, for a total of $907,344. Although on his schedules the debtor vigorously

---

[6](...continued)
The schedules state that the debtor's interest in the New Hampshire property is disputed, and the debtor explained at the hearing that the property had been purchased for a nominal sum ($1,000) by his former wife at a judicial sale to enforce her judgment against him for unpaid child support, but that he believed he still had a right under state law to redeem the property.

3

disputes any liability for the greater portion of the debts, a debt is not excluded from the analysis simply because it is disputed. To be sure, on his schedules the debtor does also characterize the disputed debts as being contingent and unliquidated. Nothing in the description of the claims, however, demonstrates that they actually fall within the accepted definition of contingent or unliquidated debts, and it seems clear that the debtor is characterizing them that way simply because he believes he will ultimately prevail on his challenges to their validity and therefore will not be required to pay them. That, however, is simply not the test. Accordingly, the court determines that the debtor's noncontingent, liquidated claims exceed the debt eligibility limits for chapter 13.

B.

As noted, the trustee also seeks dismissal based on the debtor's alleged lack of good faith in filing his petition. A chapter 13 case may be dismissed on motion of a party in interest for "cause," which includes a lack of good faith. § 1307(c), Bankruptcy Code; *In re Love*, 957 F.2d 1350, 1354 (7th Cir. 1992). A lack of good faith, either in the filing of the case or in proposing a plan, is likewise a basis for denying confirmation of a plan. § 1325(a)(3) and (7), Bankruptcy Code. In this circuit, a dismissal at the outset of a reorganization case for bad faith in the filing of the petition requires a showing of both subjective bad faith on the part of the debtor and objective futility of any possible reorganization. *Carolin Corp. v. Miller*, 886 F.2d 693 (4th Cir. 1989) (decided in context of a chapter 11 case). The Bankruptcy Code contains no definition of good faith, and the inquiry is necessarily fact-specific. With respect to the filing of a chapter 13 petition, one court has said:

> Keeping in mind that the focus of the inquiry is fundamental fairness, the following nonexhaustive list exemplifies some of the factors that are relevant

4

> when determining if a Chapter 13 petition was filed in good faith: the nature of the debt, including the question of whether the debt would be nondischargeable in a Chapter 7 proceeding; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors.

*In re Love,* 957 F.2d at 1357.

The major factor militating against a finding of good faith is the fact that the debtor has rather clearly filed this case not for the purpose of paying creditors but simply to have a forum for litigating with them.  Almost every claim, including those that have been reduced to judgment, are characterized by the debtor as disputed.  In the particular case of the child support claim, the debtor has mounted numerous challenges that have been rejected by other courts, including the United States District Court in this district and the District of Vermont.  *See Mitrano v. Warshell*, No. 04-1524 (4th Cir., October 20, 2005) (describing history of the litigation, affirming dismissal of case filed in this district for lack of subject-matter and personal jurisdiction, and granting sanctions for filing frivolous appeal).  The debtor's intent to use chapter 13 simply as a forum for disputing claims is reflected in his deliberate omission from his original schedules of creditors (primarily family members) whose claims he did not dispute and presumably intended to repay some day.  As this court has previously explained,

> The purpose of chapter 13 is to enable a financially-strapped debtor to restructure his or her debts and to repay creditors to the best of his or her ability under court protection and court supervision.  It is of course true that in the course of administering a bankruptcy case, the court has the authority to determine the amount and validity of claims filed by creditors seeking to be paid.  § 502(b), Bankruptcy Code; Fed. R. Bankr. P. 3007.  In such instances, however, the adjudication of disputed claims is secondary to the goal of repaying creditors under a plan.  Nothing in the history or structure of the Bankruptcy Code suggests that Congress ever intended the code as simply providing an alternative federal

5

>forum for the resolution of state law claims, let alone serving as a forum of last resort when a litigant had been unsuccessful in other courts.

*In re Ava Marie Sawyer*, 2007 WL 1725627 at *7 (Bankr. E.D. Va. 2007). In this connection, the court notes that chapter 13 is intended to be quick. The hearing on confirmation must be held no later than 45 days after the meeting of creditors, which in turn must be held no more than 50 days after the filing of the petition. § 1324(b), Bankruptcy Code; Fed.R.Bankr.P. 2003(a). In order to confirm a plan, a court must make, among other findings, a determination that the plan is feasible. § 1328(a)(6), Bankruptcy Code. As noted, the debtor's schedules reflect a *negative* monthly net income, and the plan he filed proposed payments of only $10 per month for 36 months. While general unsecured claims may be compromised in chapter 13 provided the plan is proposed in good faith, creditors receive as least as much as they would in a chapter 7 liquidation, and the debtor pays his or her disposable income into the plan for the required commitment period, priority unsecured claims must be paid in full. § 1322(a)(2), Bankruptcy Code. As a practical matter, objections to claims can seldom be resolved prior to a confirmation hearing. This does not mean that a plan can never be confirmed in the interim. The existence of one or more disputed claims does not necessarily doom a plan if the debtor's income would be sufficient to deal with the claim if it is ultimately allowed and allowance of the claim would not affect the liquidation analysis.[7] However, given Mr. Mitrano's income and expenses, the court could not realistically find that *any* plan debtor might propose was feasible unless the court could

---

[7] The court notes that although the filed *schedules* dispute the claims of various creditors who have filed proofs of claim, no formal objection as been filed to the claims themselves. *See* Fed.R.Bankr.P. 3007 (procedures for objection to claims). In the absence of an objection, a properly-filed claim is deemed allowed. § 502(a), Bankruptcy Code. Thus, at the present time, all filed claims are deemed allowed.

also find—which it cannot—that the debtor was *likely* to prevail on his challenges to the priority claims filed in this case.  This is not to say that one or more of the claims filed in this case might not, if a proper objection were filed, be disallowed in whole or in part.  But the *likelihood* of essentially all the claims being disallowed or reduced to the point where they could be paid through a chapter 13 plan over a 36 to 60 month period is so small that the court could not make a finding of feasibility within the time constraints imposed by the Bankruptcy Code and Rules.

Accordingly, both because the debtor's debts exceed the limit for chapter 13 eligibility, and because the debtor has plainly filed this case not in a good faith effort to repay his creditors but to litigate with them, the court will grant the trustee's motions for dismissal.  A separate order will be entered consistent with this opinion.

Date: _____          _____
                                      Stephen S. Mitchell
Alexandria, Virginia                  United States Bankruptcy Judge

Copies to:

Peter Paul Mitrano
4912 Oakcrest Drive
Fairfax, VA 22030
Debtor pro se

Gerald M. O'Donnell, Esquire
211 North Union St., Suite 240
Alexandria, VA  22314
Chapter 13 trustee

Linda D. Regenhardt, Esquire
Gary & Regenhardt PLLC
8500 Leesburg Pike, Suite 7000
Vienna, Virginia 22182-2409
Counsel for Virginia Kelly